# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MONROE E. BULLOCK, | ) |
| Plaintiff, | ) Civil Action No. 2:12-cv-00248 |
| v. | ) |
| | ) Judge Mark R. Hornak |
| GARY BUCK, C.O. MAXWELL, And Lieutenant ROBERT F. SCOTT Defendants. | ) |

## MEMORANDUM OPINION

**Mark R. Hornak, United States District Judge**

Before the Court is Plaintiff's Motion to Alter or Amend Judgment, ECF No. 36, which relates to this Court's November 8, 2013 Order granting Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, ECF No. 33. For the reasons that follow, Plaintiff's Motion is Denied.

## I. BACKGROUND

The Plaintiff in this case, Monroe Bullock, filed this *pro se* action pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Plaintiff alleged that Defendants violated his First Amendment rights by retaliating against him for filing grievances during his incarceration at the Federal Correctional Institution in McKean County, Pennsylvania ("FCI McKean"). The Plaintiff's Complaint was filed on October 17, 2012 as an attachment to a motion to proceed *in forma pauperis*, but the Complaint was signed by the Plaintiff on October 12, 2012. ECF No. 3. Pursuant to the prison mailbox rule, October 12, 2012 is treated as the filing date. *Pabon v. Mahanoy*, 654 F.3d 385, 391, n.8 (3d Cir. 2011)

("The federal 'prisoner mailbox rule' provides that a document is deemed filed on the date it is given to prison officials for mailing.").

On May 8, 2013, the Defendants filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. ECF No. 19. In their brief in support of the motion, ECF No. 20, the Defendants argued that (1) the Plaintiff failed to exhaust his available administrative remedies with respect to some claims, (2) all of Plaintiff's claims were barred by the applicable statute of limitations, (3) Plaintiff could not state a claim for retaliation with respect to certain claims, (4) Plaintiff could not show that the alleged acts rose to the level of any Constitutional violation, and (5) the Defendants were entitled to qualified immunity. Specifically relevant here is the Defendants' second argument that the claims were barred by the statute of limitations. The Defendants argued that the Plaintiff was aware of all allegedly unlawful or unconstitutional acts by no later than July 6, 2010 and therefore, because the Plaintiff did not file his Complaint until October 12, 2012, his Complaint was outside of the applicable two-year statute of limitations. ECF No. 20, at 18–19.

The Magistrate Judge entered an Order which set forth in detail the Plaintiff's obligations in responding to those Motions, especially to the summary judgment motion. ECF No. 21. The Plaintiff then filed a brief in opposition to the Defendants' Motions, ECF No. 25, in which he addressed, among other things, the Defendants' statute of limitations argument. The Plaintiff somewhat vaguely (at best) suggested that his claims could not be time-barred because he was still in the process of exhausting at least one of his administrative remedies up until March 25, 2011. ECF No. 25, at 11–12. While not explicitly using the term "tolling," considered generously it appears that the Plaintiff was probably making the argument that the statute of limitations should have been tolled during some period of time to at least one claim.

A Report and Recommendation was issued on October 21, 2013 in which it was concluded that all of the retaliatory acts alleged by the Plaintiff had taken place more than two years before he filed his Complaint and that the Complaint should therefore be dismissed as barred by the statute of limitations. Within fourteen (14) days, the Plaintiff objected to the Report and Recommendation, arguing that the statute of limitations should begin running "from the date Plaintiff completed exhausting all his available administrative remedies. . . ." ECF No. 32 at 3–4. Thereafter, on November 8, 2013, the Court granted the Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment and adopted the Report and Recommendation. ECF No. 33 ("Order"). On November 26, 2013[1], the Plaintiff filed the instant Motion to Alter or Amend Judgment pursuant to Federal Rule of Civil Procedure 59(e) in which he argued that the Court had committed a clear error of law in dismissing his case on statute of limitations grounds. ECF No. 36, at 2–3.

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 59(e)

In accordance with Federal Rule of Civil Procedure 59(e), a party may move to re-open a judgment no later than 28 days after its entry if at least one of the following grounds exists: "(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent a manifest injustice." *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 230 (3d Cir. 2011). The determination of whether a judgment should be re-opened is left to the discretion of the district court. *Cureton v. Nat. Collegiate Athletic Ass'n*, 252 F.3d 267, 272 (3d Cir. 2001).

---

[1] This date is derived from the application of the "prison mailbox rule." See *Pabon*, 654 F.3d at 391, n.8.

## B. Summary Judgment

Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the nonmoving party, the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. Pro. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Summary judgment should not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). Furthermore, "[t]he judge's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Carter v. McGrady*, 292 F.3d 152, 157, n.2 (3d Cir. 2002). Finally, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

## III. DISCUSSION

### A. Statute of Limitations

The essence of the Plaintiff's argument is that the Court, in entering its Order, committed a clear error of law by adopting the Report and Recommendation, which dismissed the case on statute of limitations grounds. The substance of Plaintiff's Rule 59(e) Motion reiterates the Objections he filed to the Magistrate's Report and Recommendation on October 30, 2013. He argues now (as he did then) that, in calculating the applicable period for the statute of limitations, the Court failed to fully consider that the statute should be tolled while the Plaintiff exhausted his administrative remedies, a process that he says is mandatory under 42 U.S.C. § 1997e(a) as amended by the Prison Litigation Reform Act of 1995, Pub. L. No. 104–134, 110 Stat. 1321 (1996). *See Nyhuis v. Reno*, 204 F.3d 65, 67 (3d Cir. 2000) ("[W]e hold that the PLRA amended § 1997e(a) in such a way as to make exhaustion of all administrative remedies mandatory.").

The Plaintiff notes that several Courts of Appeals have reached this conclusion as to tolling, *see Johnson v. Rivera*, 272 F.3d 519 (7th Cir. 2001); *Brown v. Valoff*, 422 F.3d 926 (9th Cir. 2005), and that the Third Circuit has suggested[2], though only in unpublished opinions, that such a position may be correct, *see, e.g., Pressley v. Huber*, 562 F. App'x 67, 70 (3d Cir. 2014); *Flowers v. Phelps*, 514 F. App'x 100, 101, n.1 (3d Cir. 2013); *Paluch v. Sec'y Pennsylvania Dep't Corr.*, 442 F. App'x 690, 694 (3d Cir. 2011) ("Because exhaustion of prison administrative remedies is mandatory under the Prison Litigation Reform Act, the statute of limitations applicable to § 1983 actions may be tolled while a prisoner exhausts."). Furthermore, some district courts have concluded "that statutory tolling requires us to exclude the time . . . which [i]s consumed while Plaintiff pursue[s] the administrative process." *Howard v. Mendez*, 304 F. Supp. 2d 632, 638 (M.D. Pa. 2004); *see also Walton v. Walton*, No. 13–1109, 2014 WL 4348170, at *7 (W.D.Pa. September 2, 2014) (finding that the statute of limitations did not bar plaintiff's claim because tolling applied during the period that plaintiff was exhausting his administrative remedies); *Ray v. Rogers*, No. 2:12cv985, 2014 WL 1235905, at *2 (W.D.Pa. March 25, 2014) ("[T]he statute of limitations applicable to Section 1983 actions is properly tolled while the prisoner exhausts administrative remedies."); *but see Pearson v. Beard*, 3:09-CV-54-KRG-KAP, 2013 WL 793594 (W.D. Pa. Feb. 11, 2013) *report and recommendation adopted*, 3:09-CV-54-KRG-KAP, 2013 WL 842522 (W.D. Pa. Mar. 4, 2013) ("Plaintiff's decision to file a complaint in federal court more than two years beyond the accrual of his nontrivial causes of action cannot be defended by inventing a tolling doctrine not present in either federal or state statute.").

---

[2] In each of these cases, the Court's decision did not turn on the application of tolling, and in none of them, did the Court state that the application of tolling in these circumstances was settled Circuit law.

While the Third Circuit, as the Plaintiff admits, has not spoken precedentially on this tolling issue, the Court concludes that it should have more fully addressed the tolling issue in its Order granting Defendants' motion to Dismiss, or in the Alternative, Motion for Summary Judgment. Assuming that the Plaintiff is correct and that the statute of limitations should have been tolled for the period during which the Plaintiff was pursuing his mandatory prison administrative remedies, all but two of Plaintiff's claims would still have been time-barred.[3] Plaintiff either failed to exhaust his administrative remedies or failed to file a timely complaint in all but two instances—those found in Administrative Remedy No. 579508-A1 and Administrative Remedy No. 599989-A3, both of which were administratively exhausted within the two year period leading up to Plaintiff's filing his Complaint in this Court on October 12, 2012.[4] As such, any portion of the Plaintiff's original Complaint that has its genesis in anything other than those two specific Administrative Remedies was properly dismissed as barred by the statute of limitations. The remaining claims, as will soon be evident, were properly dismissed on other grounds.

---

[3] Between January 1, 2010 and March 1, 2013, Plaintiff filed 27 Administrative Remedy Requests or Appeals for various reasons. ECF No. 20-1, at 5. A thorough review of record reveals that the Plaintiff failed to exhaust his remedies in all but three of those cases. Two of those are dealt with at length in this opinion. The third fully exhausted claim—Administrative Remedy 563523-A2—complained of triple bunking of beds in a housing unit. ECF No. 20-5. Plaintiff exhausted this claim on August 2, 2010, which is well outside of the two year statute of limitations even with the benefit of tolling. The remaining 24 claims were not exhausted. For example, in Administrative Remedy No. 566652, Plaintiff filed a complaint alleging that staff abused their authority, were unprofessional, and showed a deliberate indifference toward his medical needs. ECF No. 20-14. Plaintiff failed to exhaust his administrative remedies in this instance by filing a Central Office Administrative Remedy Appeal. *Id.*

[4] In Administrative Remedy No. 579508-A1, Plaintiff challenged his removal from his work assignment in the Laundry work detail. The Plaintiff completed all stages of the administrative review process pursuant to 28 C.F.R. § 542.10 *et seq.*, ultimately filing a Central Office Administrative Remedy Appeal. ECF No. 20-3, at 7. That appeal was denied on October 12, 2010, meaning that he filed his civil Complaint on the two-year anniversary of the exhaustion of his administrative remedies. Administrative Remedy No. 599989-A3 involved the Plaintiff's challenge of an incident report that found the Plaintiff guilty of Being Insolent Toward a Staff Member. ECF No. 40-4, at 3. With respect to this claim, the Plaintiff's administrative remedies were exhausted on March 25, 2011, the day his appeal was denied by the Office of General Counsel. *Id.* at 9.

## B. Retaliation Claims

Bullock's tolling argument, even if it were the law of this Circuit, will not save his claims. This Court is to make a *de novo* review of the petition and documents in the case, together with the report and recommendation and objections thereto before entering its Order. So while the Report and Recommendation stated the statute of limitations as the basis for granting Defendants' Motion, this Court is not limited to the reasoning contained in it. Rather, the Court is free (if not obligated) to consider all of the documents in this case in support of and opposition to the Defendants' Motions. A district judge is to resolve a party's objections to a magistrate judge's report and recommendation in the following manner:

> The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Fed. R. Civ. P. 72(b)(3); *see also Kenny v. United States*, 489 F. App'x 628, 630, n.2 (3d Cir. 2012) ("Upon objection, the district court reviews the magistrate court's ruling on a non-dispositive motion under a clearly erroneous standard, while dispositive recommendations are reviewed *de novo*.").

With that in mind, we will address the two claims that, if given the benefit of tolling, could have survived to the next analytical step. Both Administrative Remedy No. 579508-A1 and Administrative Remedy No. 599989-A3 implicate retaliation claims. In order to bring a retaliation claim, a plaintiff must establish three elements. As the Third Circuit explained in *Carter v. McGrady*:

> A prisoner alleging that prison officials have retaliated against him for exercising his constitutional rights must prove that: 1) the conduct in which he was engaged was constitutionally protected; 2) he suffered "adverse action" at the hands of prison officials; and 3) his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him.

292 F.3d 152, 157–58 (3d Cir. 2002). The Third Circuit has suggested that the filing of prison grievances may be constitutionally protected activity. *Robinson v. Taylor*, 204 F. App'x 155, 157 (3d Cir. 2006) (citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir.2003)); *see also Davis v. Goord*, 320 F.3d 346, 352-53 (2d Cir.2003). As for the "adverse action" prong, "a prisoner-plaintiff satisfies this requirement by demonstrating that the action was sufficient to deter a person of ordinary firmness from exercising his constitutional rights." *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) (internal quotation marks and alterations omitted). Finally, the third prong may be satisfied by showing "a causal link between the exercise of his constitutional rights and the adverse action taken against him." *Id.* To establish that causal connection, a plaintiff "usually must prove one of two things: (1) an unusually suggestive time proximity between the protected activity and the allegedly retaliatory action; or (2) a pattern of antagonism coupled with timing to establish a causal link." *DeFranco v. Wolfe*, 387 F. App'x 147, 154 (3d Cir. 2010) (citing *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir.2007)). A plaintiff may also show that "from the evidence in the record as a whole, the trier of fact should infer causation." *Id.*

### a. Administrative Remedy No. 579508-A1

In Administrative Remedy No. 579508-A1, Plaintiff challenged his removal from his work assignment in the Laundry work detail. The undisputed factual background for this challenge, as set forth in Defendants' Brief, ECF No. 20, at 5–6, goes like this: Shortly after his July 17, 2009 designation to FCI McKean, Plaintiff was assigned to work in Food Services. With the exception of a temporary removal from work while in medical convalescence status,

8

Plaintiff worked in the Inmate Dining Room from August 31, 2009 until January 6, 2010.[5] He was then assigned to the Laundry Department for *two days* (January 6, 2010 – January 8, 2010) and then moved back to the Inmate Dining Room for two days (January 8, 2010 – January 11, 2010). From January 11, 2010 through January 27, 2010, he was not assigned to a work detail. After that, he was assigned to the position of Education Orderly from January 26, 2010 through April 29, 2010, except during two stints he did in the SHU. Plaintiff was assigned to the day shift compound work detail from April 29, 2010 until he was transferred from FCI McKean on May 20, 2010.

On February 16, 2010, Plaintiff submitted a Request for Administrative Remedy alleging that he was removed from his Laundry work assignment and given a false reason for the work assignment transfer. At the last stage of the Administrative Remedy process—the Central Office Administration Remedy Appeal—the Plaintiff raised the issue of retaliation for the first time.[6] The Acting Warden responded to Plaintiff's Request for Administrative Remedy, explaining that the two-day Laundry detail assignment had been inadvertent and that the workers who remained in Laundry either had experience in the field or had been interviewed for the position. ECF No. 20-3, at 3. Plaintiff pursued his Administrative Remedies on this claim and, as explained above, filed a timely Complaint with this Court.

The facts alleged in Administrative Remedy No. 579508-A1 are insufficient to support a retaliation claim. The claim fails at the second prong. In order to meet the adverse action prong a Plaintiff must demonstrate that the alleged retaliatory action was sufficiently adverse "to deter a person of ordinary firmness" from exercising his rights. *Allah v. Seiverling*, 229 F.3d 220, 225

---

[5] Plaintiff alleges that he had filed complaints against the food service foreman Patrick Sisk for making terroristic threats and had asked for a transfer out of the Inmate Dining Room. *See* ECF No. 3, at 3.

[6] The Defendants also argued that, pursuant to 28 C.F.R. § 542.15(b)(2), inmates are prohibited from raising new issues on appeal. If that's the case, so the argument goes, Plaintiff may not have even exhausted his retaliation claim, which would be another basis for dismissal.

9

(3d Cir. 2000) (internal quotation marks omitted). There is simply nothing in the record by which a rational finder of fact could conclude that being moved from the Laundry Department to the position of Education Orderly was adverse under this standard. In fact, nothing in the Plaintiff's Complaint or his Brief in Opposition to the Defendants' Motion, ECF No. 25, even alleges that the conditions in the Education Orderly job were worse than those in the Laundry Department. As such, Plaintiff has failed as a matter of law to substantiate a retaliation claim under the facts alleged in Administrative Remedy No. 579508-A1.

### b. Administrative Remedy No. 599989-A3

Administrative Remedy No. 599989-A3 stems from an Incident Report issued to the Plaintiff for Being Insolent Toward a Staff Member on March 15, 2010. ECF No. 20-3, at 3. The Report alleged that Defendant Buck had searched Plaintiff and that, shortly thereafter, Plaintiff entered the Defendant Buck's office and said, "When you searched me out there you grabbed my coat, nobody, I mean nobody grabs my coat do you understand that!" *Id.* at 6. Plaintiff denied having said this throughout all levels of the administrative process. In his Complaint, Plaintiff tells a different story. He alleges that, following Buck's search of him, Plaintiff went into Buck's office and requested a BP-8 ½ and a BP-10 in order to complain about Buck's supposed use of unjustified force. ECF No. 3, at 4. The sanctions imposed on Plaintiff as a result of this incident were sixty (60) days loss of telephone and commissary privileges. *Id.* The Plaintiff pursued his administrative remedies, but, at each stage of the administrative review process, his testimony was found less credible than Defendant Buck's testimony.

The same retaliation analysis applies to Administrative Remedy No. 599989-A3, which also fails at prong two. Even assuming Plaintiff could satisfy the first and third prongs, this claim fails. Under Third Circuit precedent, it does not appear that sixty days without the ability to

make phone calls or buy things from the commissary would be "sufficiently adverse to deter a person of ordinary firmness from exercising his rights." *Allah*, 229 F.3d at 225 (internal quotation marks omitted). In *Allah*, the prisoner had been placed in administrative segregation, which resulted in "reduced access to phone calls, reduced access to the commissary, reduced access to recreation, *confinement in his cell for all but five hours per week*, denial of access to rehabilitative programs and, significantly, inadequate access to legal research materials and assistance." *Id.* (emphasis supplied). The Third Circuit determined that a fact-finder could view this "continued placement in administrative confinement" as enough to "deter a person of ordinary firmness from exercising his First Amendment rights." *Id.; see also Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (finding that "*several months in disciplinary confinement* would deter a reasonably firm prisoner from exercising his First Amendment rights") (emphasis supplied); *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) (plaintiff demonstrated adverse action when he showed he was "denied parole, transferred to a distant prison where his family could not visit him regularly, and penalized financially").

By contrast, the Third Circuit has determined that other prison sanctions do not rise to the level of adverse action as a matter of law. *See Brightwell v. Lehman*, 637 F.3d 187, 194 (3d Cir. 2011) (finding that a "misconduct" charging the inmate with filing a false report that was dismissed "does not rise to the level of 'adverse action' because it would not be sufficient to deter a person of ordinary firmness from exercising his First Amendment rights") (internal quotation marks omitted). Particularly relevant here is *Huertas v. Sobina*, in which a prisoner alleged that the prisoner official committed the following retaliatory acts:

> (1) took photographs from a letter sent by Huertas's brother; (2) interfered with Huertas's receipt of a magazine subscription and related correspondences; (3) interfered with letters to and from a pen pal service Huertas subscribed to; (4) took letters and photographs sent by and to Huertas's friend in England; and (5)

11

confiscated and returned to Huertas's relatives an unspecified amount of funds they had sent to Huertas.

476 F. App'x 981, 983 (3d Cir. 2012). The *Huertas* court found that this purported conduct "was not sufficiently adverse to deter a person of ordinary firmness from pursuing grievances. Simply put, *more serious conduct is required* to make out a retaliation claim under § 1983." *Id.* at 984 (emphasis supplied). Whereas *Huertas* involved the actual deprivation of significant property (letters, personal photographs, money) along with the impairment of communications privileges, Plaintiff's claim involves a temporary lack of access to the telephone and commissary.[7] And Plaintiff's case certainly does not resemble the cases in which the Third Circuit has found adverse action, all of which involved far more serious deprivations, such as loss of parole, institutional transfers far from family, or segregated or restricted disciplinary confinement. As such, a reasonable finder of fact could not conclude that Plaintiff suffered an adverse action when measured against the applicable legal standard.

### IV. <u>CONCLUSION</u>

Because Summary Judgment was properly granted, Plaintiff's Motion to Alter or Amend Judgment pursuant to FRCP 59(e) will be denied.

An appropriate Order will follow.

_____
Mark R. Hornak
United States District Judge

Dated: September 30, 2014

cc: All counsel of record
    Mr. Monroe Bullock

---

[7] In this regard, this case and *Huertas* are parallel. Whether by administrative directive or the deprivation of money, the impact on commissary access would be similar.

12